IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WOODROW DUNN JR.,

    Plaintiff,

vs.                                                                                                                                                                                                 No. CIV 19-0882 JB\CG

NENMDF,
GEO GROUP, INC.

    Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Plaintiff's Prisoner Civil Rights Complaint, filed September 23, 2019 (Doc. 1-1)("Complaint"). Plaintiff is pro se and incarcerated. He alleges prison officials are using computer technology to force an animated voice through his larynx. See Complaint at 2, 5. Having carefully reviewed the matter under 28 U.S.C. § 1915A and Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court will dismiss the Complaint with prejudice. Fed. R. Civ. P. 12(b)(6).

**FACTUAL AND PROCEDURAL BACKGROUND**

Dunn previously was incarcerated at the Northeastern New Mexico Detention Facility ("NENMDF"). See Complaint ¶ 3, at 1. He alleges that in 2019, the Defendants were "specking [sic] thr[e]w [his] out put speech with transmission[s]." Complaint ¶ 5, at 2. The Complaint refers to the phenomenon as "output voice transmission." Complaint ¶ 5, at 2. Dunn alleges that Defendants, NENMDF and GEO Group, Inc. ("GEO"), are accomplishing this by using "some kind of equipment" or computer to "force feed words" through his larynx, and against his will. Complaint at 5. Plaintiff alleges that in 2019, NENMDF spoke "20,000 words a day threw [sic] me that I cannot control." Complaint at 9. He describes the process as "torture," and alleges the

involuntary words include threats against himself and his family along with insults like "punk" or "b*tch." Complaint at 9, 12. Dunn believes Defendants are forcing animated words through his larynx to obtain a murder confession. See Complaint at 2-3. Dunn is serving a sixteen-year sentence for second degree murder after pleading guilty to that charge in New Mexico's Fifth Judicial District Court, Case No. D-506-CR-2014-00159.

Based on these facts, the Complaint raises federal constitutional claims under the First Amendment, the Eighth Amendment, and the Due Process Clause of the Constitution of the United States of America against the Defendants. See Complaint at 1. The Complaint appears on a state form and may also raise claims under the New Mexico Tort Claims Act, N.M.S.A. §§ 41-4-1, et. seq. See Complaint at 1. Dunn originally filed the Complaint in the Union County Judicial District Court of the State of New Mexico on August 21, 2019. See Complaint at 1. GEO removed the Complaint to Federal Court on September 23, 2019, within thirty days of receipt of notice of the lawsuit. See Notice of Removal filed September 23, 2019 (Doc. 1). The Court referred the matter to the Honorable Carmen Garza, Chief United States Magistrate Judge for the United States District Court for the District of New Mexico, for recommended findings and final disposition. See Order of Referral in Prisoner Cases, filed September 24, 2019 (Doc. 4).

After the removal, Dunn submitted over forty-five supplemental filings. See Docs. 5-7, 9, 11-27, 29-35, 37-52 (together, the "Supplemental Filings"). He also filed a Motion to Appoint Counsel, which Chief Magistrate Judge Garza denied by an Order entered March 25, 2020. See Motion to Appoint Counsel filed March 16, 2020 (Doc. 28); Order Denying Motion to Appoint Counsel, filed March 25, 2020 (Doc. 36). The vast majority of the Supplemental Filings consist other inmates and/or Dunn's father's purported witness statements. See Docs. 6, 7, 9, 12-19, 21,

23-27, 29-30, 32-35, 37-38, 40-49, 51.  The alleged witnesses all state that they observed Dunn speaking in an animated, transmitted voice against his will.  See Docs. 6, 7, 9, 12-19, 21, 23-27, 29-30, 32-35, 37-38, 40-49, 51.  In the remaining supplemental filings, Dunn: (i) argues NENMDF is legally capable of being sued (Doc. 5); (ii) asks the Court to ensure that more witness statements are forwarded from the state court (Doc. 11); (iii) wrote a memorandum regarding his inability to control his own speech (Doc. 22); (iv) alleges that he is being "violently assaulted with transmission of an animated voice" and "tortured with an animated voice."  (Doc. 39 at 1; Doc. 50 at 2).  Dunn also submits a memorandum from a health provider, which states he is delusional and imagines transmissions linked to an ear-piece.  (Doc. 20).

Dunn submitted the two final supplemental filings -- an argument about adding damages to his freedom-of-religion claim and a response to an Order to Show Cause on filing restrictions -- in the wrong case.  (Docs. 31, 52).  The supplement addressing damages and a freedom-of-religion claim (Doc. 31) pertain to Dunn v. GEO Group, No. CIV 19-0876 RB\KK; in that case, Dunn sued prison officials for not facilitating the purchase of property outside of prison so that he could start his own church.  The Honorable Robert Brack, Senior United States District Judge for the United States District Court for the District of New Mexico, dismissed the case with prejudice on August 20, 2020.  See Dunn v. GEO Group, No. CIV 19-0876 RB\KK, Memorandum Opinion and Order entered August 20, 2020, Doc. 33.  The supplement addressing filing restrictions pertaining to Dunn v. NENMDF, No. CIV 19-cv-881 KWR\KRS.  In that case, The Honorable Kea Riggs, United States District Judge for the United States District Court for the District of New Mexico, imposed filing restrictions after Plaintiff continued to file motions to reconsider the dismissal of his 42 U.S.C. § 1983 civil rights claims.  See Dunn v. NENMDF, No. CIV 19-0881

KWR\KRS, Order Denying Motions and Imposing Filing Restrictions entered May 28, 2020 (Doc. 43).

The Court will disregard two supplemental filings that pertain to other cases.  See (Docs. 31, 52).  With respect to the remaining Supplemental Filings, which only amplify or restate Dunn's claims, the Court considered their contents, but concludes they did not change the outcome in this case.

## LAW REGARDING INITIAL REVIEW OF PRISONER COMPLAINTS

Section 1915A of Title 28 of the United States Code requires the Court to conduct a sua sponte review of all civil complaints where the plaintiff is incarcerated and seeks relief from a government entity.  See 28 U.S.C. § 1915A.  The Court must dismiss any in forma pauperis complaint that is frivolous, malicious, or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A(b)(1).  The Court also may dismiss a complaint sua sponte under rule 12(b)(6) of the Federal Rules of Civil Procedure if "it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [the plaintiff] an opportunity to amend [the] complaint would be futile."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (quotations omitted).  In other words, the same standard of review applies under rule 12(b)(6) and § 1915A

Rule 12(b)(6) tests the "sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(citing Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991)).  The sufficiency of a complaint is a question of law, and when reviewing the complaint, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v.

Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007)("[O]nly '[i]f a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts' would the defendant prevail on a motion to dismiss." (second alteration in Tellabs, Inc. v. Makor Issues & Rights, Ltd., 437 F.3d 588, 602 (7th Cir. 2006))); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citations and footnote omitted). Section 1915(e) expands this inquiry by granting courts "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims" that are fantastical and/or belied by the record. Neitzke v. Williams, 490 U.S. 319, 327 (1989).

To survive Rule 12(b)(6) review, a plaintiff's complaint must contain sufficient "facts that, if assumed to be true, state a claim to relief that is plausible on its face." Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010)(citing Ashcroft v. Iqbal, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Okla., 519 F.3d 1242, 1247 (10th Cir. 2008)(McConnell, J.)(citation omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

In conducting the initial review, the pro se prisoner's pleadings "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." Hall v. Bellman, 935 F.2d 1106, 1110 (10th Cir. 1991).  If the court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, … confusion of various legal theories, … poor syntax and sentence construction, or … unfamiliarity with pleading requirements."  935 F.2d at 1110.  At the same time, however, pro se parties must file a legible pleading that complies with rule 8 of the Federal Rules of Civil Procedure.  That rule requires: "(1) a short and plain statement of the grounds for the court's jurisdiction … ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought … "  Fed. R. Civ. P. 8(a).

"It is not the role of … the court … to sort through a lengthy … complaint and voluminous exhibits … to construct plaintiff's causes of action."  McNamara v. Brauchler, 570 Fed. App'x 741, 743 (10th Cir. 2014)(citations omitted).[1]  See also Pola v. Utah, 2012 WL 292272, * 1 (10th Cir. Feb. 1, 2012)(affirming dismissal of complaint that "included everything but the kitchen sink").  Allowing such pleadings to survive screening "would force the Defendants to carefully comb through" various documents "to ascertain which … pertinent allegations to which a response is warranted."  McNamara v. Brauchler, 570 Fed. App'x at 743.

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …

---

[1]Stack v. McCotter is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The United States Court of Appeals for the Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Stack v. McCotter and the other unpublished opinions cited herein.  See Thibeaux v. Cain, 448 Fed.Appx. 863, 864 (10th Cir. 2012); Kersh v. Smeler, 390 Fed. App'x 836 (10th Cir. 2010); Owens–El v. Pugh, 16 Fed. App'x 878 (10th Cir. 2001); Flores v. U.S. Atty. Gen., 442 Fed. App'x 383 (10th Cir. 2011); Murray v. United States, 475 Fed. App'x 311, 312 (10th Cir. 2012), have persuasive value with respect to material issues and will assist the Court in its disposition of this Memorandum Opinion.

42 U.S.C. § 1983.  Section 1983 creates only the right of action; it does not create any substantive rights.  Substantive rights must come from the Constitution or from a federal statute.  See Nelson v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 did not create any substantive rights, but merely enforces existing constitutional and federal statutory rights…")(internal quotation marks, alteration, and citation omitted).  Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights.  To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988). The Court has noted:

> [A] plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Schaefer v. Las Cruces Public School Dist., 716 F. Supp. 2d 1052, 1063 (D.N.M. 2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).

      The Supreme Court clarified that, in alleging a § 1983 action against a government agent in their individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Consequently, there is no respondeat superior liability under § 1983. See Ashcroft v. Iqbal, 556 U.S. at 675, 129 S.Ct. 1937 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  Entities cannot be held liable solely on the basis of the

existence of an employer-employee relationship with an alleged tortfeasor.  See Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 689 (1978).  Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for their employees' tortious acts. See Barney v. Pulsipher, 143 F.3d 1299, 1307–08 (10th Cir. 1998).

The United States Court of Appeals for the Tenth Circuit recognizes that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability.  See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012)(quoting 42 U.S.C. § 1983; Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006)(internal quotation marks omitted)). The Tenth Circuit also recognizes that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations. See Garcia v. Casuas, 2011 WL 7444745, at *25–26 (D.N.M. 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)). The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is: "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. at 676.  The Tenth Circuit in Dodds v. Richardson stated:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution  . . . ."

Dodds v. Richardson, 614 F.3d at 1199.  The Tenth Circuit has noted, however, that "Iqbal may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case."  Dodds v. Richardson, 614 F.3d at 1200.  It concluded that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis."  Dodds v. Richardson, 614 F.3d at 1200.  More specifically, the Tenth Circuit recognized that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . express or otherwise – showing their authorization or approval of such misconduct."  Dodds v. Richardson, 614 F.3d at 1200–01.

The specific example that the Tenth Circuit used to illustrate this principle is Rizzo v. Goode, 423 U.S. 362 (1976), where the plaintiff sought to hold a mayor, a police commissioner, and other city officials liable under § 1983 for constitutional violations that unnamed individual police officers committed.  See Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).  The Tenth Circuit noted that the Supreme Court in that case found a sufficient link between the police misconduct and the city officials' conduct, because there was a deliberate plan by some of the named defendants to "crush the nascent labor organizations."  Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).

## ANALYSIS

Dunn asserts claims against the NENMDF and GEO, which allegedly used computer technology to force an "animated" voice out through his larynx.  See Complaint at 2, 5.  The Complaint raises various causes of action based on this factual allegation, including cruel and unusual punishment, due process violations, First Amendment violations, torture, and state tort

claims such as assault and battery. After filing the Complaint, Dunn also filed over forty-five Supplemental Filings. The Court has considered the Supplemental Filings, with the exception of two documents pertaining to other cases, because the Supplemental Filings expand upon his involuntary voice transmission theory.

As noted above, the Court must screen this case pursuant to 28 U.S.C. § 1915A. The ability to screen prisoner actions "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions . . . describe[e] fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. at 327. The Tenth Circuit repeatedly has relied on this authority to reject civil rights claims based on the alleged implantation/use of mind control and tracking devices. See, e.g., Thibeaux v. Cain, 448 Fed.Appx. 863, 864 (10th Cir. 2012)(unpublished)(stating that the claim in a pro se lawsuit alleging that a wire had been implanted in plaintiff's body to monitor his thoughts was frivolous); Kersh v. Smeler, 390 Fed. App'x 836 (10th Cir. 2010)(unpublished)(affirming dismissal of habeas petition where petitioner alleged an "invisible human robot conspiracy"); Owens–El v. Pugh, 16 Fed. App'x 878 (10th Cir. 2001)(unpublished)(affirming dismissal of claims as factually frivolous where prisoner alleged harassment and torture by way of a mind-control device); Flores v. U.S. Atty. Gen., 442 Fed. App'x 383 (10th Cir. 2011)(unpublished)(affirming § 1915(e)(2) dismissal of civil rights complaint alleging that the government used outer space satellites to torture plaintiff and his family members); Murray v. United States, 475 Fed. App'x 311, 312 (10th Cir. 2012)(unpublished)(complaint alleging various conspiracies by the government, including the use of satellites to damage the plaintiff's reproductive system, was properly dismissed).

Dunn's belief that prison officials are using technology to force an animated voice through his larynx falls within this line of cases.   Dunn also submitted a memorandum from Mental Health Provider Morgan Libby, who states he "was delusional about a transmission that linked ear piece radio communications between the White Boys . . . ."   Memorandum at 1, dated December 31, 2018 (Doc. 20).   Accordingly, Dunn's allegations based on an involuntary voice transmission -- which are the only discernable allegations raised in this proceeding -- do not state any plausible claim for relief.   The Court will dismiss the Complaint pursuant to 28 U.S.C. § 1915A(b)(1).

Pro se prisoners are often given an opportunity to amend, if the pleading defects are attributable to their ignorance of federal law.   See Hall v. Bellmon, 935 F.2d at 1110.   However, courts need not invite an amendment when any amended complaint would also be subject to dismissal under rule 12(b)(6).   See Bradley v. Val-Mejias, 379 F.3d 892, 901 (10th Cir. 2004).   Because Dunn's claims are factually frivolous, amending the Complaint would be futile.   The Court therefore declines to sua sponte invite an amendment and will dismiss the Complaint with prejudice.

**IT IS ORDERED** that: (i) the Plaintiff's Prisoner Civil Rights Complaint, filed August 21, 2019 (Doc. 1-1) is dismissed with prejudice; and (ii) the Court will file a separate Final Judgment closing the civil case.

_____
UNITED STATES DISTRICT JUDGE

*Parties:*

Woodrow Dunn Jr.
Los Lunas, New Mexico

    *Pro se Plaintiff*